UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| CP ST. LOUIS CASINO, LLC and CP ST. LOUIS CASINO ACQUISITION, LLC, | |
|---|---|
| Plaintiffs, | |
| v. | Case No. 07-cv-447-JPG |
| CASINO QUEEN, INC., | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Casino Queen, Inc.'s Partial Motion to Dismiss (Doc. 25) to which Plaintiffs CP St. Louis Casino, LLC and CP St. Louis Casino Acquisition, LLC have responded (Doc. 28). Also before the Court is Plaintiffs's Motion to Voluntarily Dismiss Count III of the Amended Complaint (Doc. 29). For the following reasons, the Court GRANTS Plaintiffs's Motion (Doc. 29) and DENIES Defendant's Motion (Doc. 25).

**BACKGROUND**

**I.      Facts**

For purposes of this motion, the Court accepts the following as true. In late 2005, Plaintiffs, CP St. Louis Casino, LLC and CP St. Louis Casino Acquisition, LLC,[1] began negotiations with Defendant, Casino Queen, to obtain ownership and control of the Casino Queen for an aggregate purchase price of $200 million. In April 2006, the parties entered into a Merger Agreement (the Agreement) which established the terms and conditions of the transfer.

---

[1] For simplicity's sake, hereinafter Plaintiffs will be jointly referred to as St. Louis Casino.

1

Any such transfer would require the consent of certain governmental agencies, and St. Louis Casino would have to obtain a gaming licence.

A provision of the Agreement required that Casino Queen certify that no event had occurred which might place its gaming permits and licences in peril. Another provision of the Agreement required Casino Queen to certify that it was not conducting its business in violation of gaming laws and regulations and that, to its knowledge, "its directors, officers, key employees and persons performing management functions similar to officers and partners" were complying with gaming laws and regulations. In another provision of the Agreement, Casino Queen represented to St. Louis Casino that its business was not being conducted in violation of any law, including gaming laws, and that it had "not received a notice of any investigation or review by any Governmental Entity with respect to [it] or the Casino Queen property that is pending. . . no investigation or review is threatened, nor has any Governmental Entity indicated any intention to conduct the same." Further, Casino Queen promised to promptly notify St. Louis Casino should any of its representations later be rendered untrue.

Both parties also agreed to promptly notify the other in the event that either reasonably believed that governmental approval or licencing would be denied or materially delayed. And both sides promised to use "best efforts" to obtain from "Governmental Entities" any required licences, permits, or consents.

As per a clause in the Agreement regarding the transferability of stock, Casino Queen notified St. Louis Casino that Gerard Kenny, a stockholder and/or director of Casino Queen, had pledged his shares to certain other stockholders and/or directors. Casino Queen disclosed that "the validity of the pledge is an issue currently in litigation." What Casino Queen did not

2

disclose, however, was that the stock pledge was being investigated by the Illinois Gaming Board (the Board). Furthermore, Casino Queen did not disclose that Gerard Kenny was also being investigated by the Board for alleged ties to organized crime. Casino Queen became aware of the Board's investigations into Gerard Kenny and the proposed stock pledge sometime before November 6, 2006. In January 2007, the Board ordered Gerard Kenny to economically dissociate himself from Casino Queen. In the meantime, St. Louis Casino found their application to obtain a gaming licence from the Board delayed, perhaps because of the undisclosed investigations into Gerard Kenny's activities.

An outside date of December 31, 2006 was set for closing on the acquisition. However, St. Louis Casino believed it would not receive the necessary governmental approval and licencing to consummate the deal by that date. Therefore, as per a clause in the Agreement, the parties agreed to extend the date for closing to February 28, 2007. In exchange for Casino Queen's agreement to push back the closing date, St. Louis Casino agreed to pay Casino Queen non-refundable deposit of five million dollars to be held in an escrow account. On or about February 26, 2007, St. Louis Casino, still waiting to obtain a gaming licence, asked for a further extension of the closing date. Casino Queen refused, and terminated the Agreement. Casino Queen kept the five million dollars in the escrow account, despite St. Louis Casino's demand that it return the money.

## II. Procedural Posture

St. Louis Casino brought this action alleging breach of contract (Count I), fraud (Count II), violation of the Illinois Consumer Fraud and Deceptive Practices Act (Consumer Fraud Act) (Count III), violation of section 10(b) of the Securities and Exchange Act (SEA) and

3

implementing rule 10b-5 (Count IV), and unjust enrichment (Count V).

The Court previously dismissed Count III because St. Louis Casino failed to allege that it was a consumer within the meaning of the Consumer Fraud Act or that Casino Queen's alleged fraud implicated consumer protection concerns. The Court also dismissed Count IV finding that St. Louis Casino failed to allege with sufficient specificity that Casino Queen's false statements were made with the requisite scienter. St. Louis Casino was granted leave to file an amended complaint, seeking to overcome these shortfalls. Casino Queen addresses the instant Motion to the Amended Complaint contending that St. Louis Casino has still failed to state a cause of action under the Consumer Fraud Act, and has still failed to allege sufficient facts to meet the heightened pleading requirements of the SEA and SEC rule 10b-5.

## ANALYSIS

For purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir.2007). The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Therefore, the complaint need not allege detailed facts. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir.2007). However, in order to provide fair notice of the grounds for his claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965 (2007)) (internal quotations omitted). The complaint must offer "more than labels and conclusions, and a

4

formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S.Ct. at 1965. The plaintiff's pleading obligation is to avoid factual allegations "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir.2007). However, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 127 S.Ct. at 1969 n 8.

**I.      Count III - The Consumer Fraud Act**

Casino Queen asks that the Court dismiss this count, asserting that St. Louis Casino has once again failed to state a claim under the Consumer Fraud Act. Apparently agreeing with this analysis, St. Louis Casino filed a Motion to Voluntarily Dismiss this count pursuant to Federal Rule of Civil Procedure 41(a)(1). Finding that no prejudice will result to Defendant by allowing Plaintiffs to dismiss Count III, the Court GRANTS St. Louis Casino's Motion and dismisses the count without prejudice. As such, the Court denies as moot Casino Queen's motion to dismiss Count III.

**II.     Count IV - Securities Fraud**

The implementing SEC rule at issue in Count IV reads, in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,. . . in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5

The Seventh Circuit has held that in order to state a claim under section 10b-5, the

plaintiff must allege that: (1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages. *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir.1997). Casino Queen contends that St. Louis Casino has failed to adequately plead the scienter element and the causation element.[2]

### A. Scienter

In order to be actionable under 10b-5, the false statement must have been made with the requisite scienter; that is, it must be made with either an intent to deceive or with a reckless disregard of a substantial risk that the statement is false. *Higginbotham v. Baxter International, Inc.*, 495 F.3d 753, 756 (7th Cir.2007). The Private Securities Litigation Reform Act (PSLRA) requires that any complaint in a securities fraud act "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind". 15 U.S.C. § 78u-4(b)(2). The Supreme Court has interpreted this language to mean that "the inference of scienter must be more than merely 'reasonable' or 'permissible'-it must be cogent and compelling, thus strong in light of other explanations." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,--U.S. --; 127 S. Ct. 2499, 2510 (2007). "A complaint will survive only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* The Seventh Circuit has clarified that this

---

[2]In a footnote in its reply brief, Casino Queen questions for the first time whether the Amended Complaint adequately pleads that the false statements were made in connection with the purchase or sale of securities. Issues raised for the first time in a reply brief are considered waived and will not be considered by the Court. *See Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir.2004).

standard means that a district court must dismiss "a complaint that on its face, and without reference to the defendant's case, creates only a weak or bare inference of scienter, suggesting that the plaintiff would prevail only if there were no defense case at all;" others will survive dismissal. *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 2008 WL 151180, *2 (7th Cir.2008).

In its Order dismissing this count in the original complaint, the Court found that St. Louis Casino had presented facts from which the trier of fact could permissibly find that Casino Queen acted with the requisite scienter, but that such a conclusion was "not very compelling." In its amended complaint, St. Louis Casino has added few new facts, but has restructured the complaint in such a way as to clarify for the Court its allegations regarding the timing of the false statements or omissions as well as the motive Casino Queen might have had in withholding the information. Without reference to Casino Queen's case, the amended complaint creates a cogent and compelling inference that Casino Queen acted with the requisite scienter.

The amended complaint asserts that when Casino Queen and St. Louis Casino entered into the Agreement, Casino Queen certified that it had not received notice of any pending, threatened or intended investigation or review by any governmental entity with respect to Casino Queen or its property. This term was material because governmental approval would be necessary before the sale could be consummated. After the parties entered into the agreement, Casino Queen became aware, if it had not already been, that the Illinois Gaming Commission was investigating one of Casino Queen's stockholders or directors for alleged ties to organized crime. After Casino Queen found out about this investigation, the parties executed an amendment to the Agreement, in which Casino Queen agreed to moving the outside closing date of the sale in exchange for five million dollars from St. Louis Casino. At the time of the

7

amendment, Casino Queen knew that some of the representations contained in the Agreement were false. St. Louis Casino contends that Casino Queen purposefully failed to correct these earlier, now false, statements in order to induce St. Louis Casino to pay it five million dollars. Casino Queen knew that if St. Louis Casino were aware of all the material facts, it would walk away from the Agreement leaving Casino Queen with nothing. Accepting as true all facts alleged in the amended complaint, St. Louis Casino has set forth facts from which a cogent, compelling inference can be drawn that Casino Queen failed to correct its false certifications in order to ensure that it would walk away from the faltering deal with five million dollars rather than with nothing.

B.      **Loss Causation**

A plaintiff in a securities fraud action under Rule 10b-5 must adequately plead both transaction causation, that the plaintiff would not have invested if the defendant had stated truthfully the material facts at the time of sale, and loss causation, that the plaintiff was in fact injured by the misstatement or omission of which it complains.[3] *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir.1997). The requirement of pleading loss causation does not "require that the plaintiff allege that it could not have suffered the same damage under other circumstances." *Id.* at 649. "Rather, the requirement is straightforward: The plaintiff must allege that it was in fact injured by the misstatement or omission of which it complains." *Id.* In *Caremark*, the Seventh Circuit held that the plaintiff had adequately pled loss causation when it

---

[3]This distinction is important in cases where the false statement induced the plaintiff to buy the securities but arguably did not cause any decline in the value of the security. It is not so important in cases like the instant one, where the allegation is that the false statement induced a purchase that was essentially worthless at its inception.

8

alleged that the defendant's omission caused the plaintiff to undervalue the risk it was taking in accepting the defendant's notes, which subsequently decreased in value, as payment. *Id*.

Here, St. Louis Casino alleges that Casino Queen's false statements and omissions caused it to commit five million dollars to secure a closing extension that it would not have asked for had it known about the Illinois Gaming Board's investigation. Casino Queen argues that St. Louis Casino, in order to sufficiently allege causation, must allege that the investigation into Gerard Kenny caused St. Louis Casino to be unable to get its license. But, St. Louis Casino does not advance its failure to obtain a gaming license as its injury. Rather, St. Louis Casino's injury is the five million dollars it paid Casino Queen to extend the closing date in order to allow St. Louis Casino more time to secure a license. St. Louis Casino adequately pleads causation when it alleges that Casino Queen's false statements caused St. Louis Casino to undervalue the risk that a gaming license would not be forthcoming in time for the closing.

Casino Queen argues forcefully that St. Louis Casino will be unable to prove the elements of its claims. However, whether Plaintiffs will find enough evidentiary support to prove their claims to the satisfaction of the factfinder is decidedly not an issue for the Court to resolve at this preliminary stage. Because St. Louis Casino has adequately pled that Casino Queen acted with the requisite scienter in making false statements of material fact which caused it to lose five million dollars, St. Louis Casino has stated a claim sufficient to survive dismissal.

## CONCLUSION

The Court **DENIES** Defendant's Partial Motion to Dismiss (Doc. 25). The Court

**GRANTS** Plaintiffs's Motion to Voluntarily Dismiss Count III (Doc. 29).

**IT IS SO ORDERED.**
**DATED: February 15, 2008**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
